**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

ESTATE OF ANDREW DAVIS GOOD          :
and KRISTI GOOD,                     :
                                     :    CIVIL ACTION
                        Plaintiffs,  :
                                     :
            v.                       :    DOCKET NO. 20-cv-1431
                                     :
BARBARA RODRIGUEZ-SANTANA,           :
                                     :
                        Defendant.   :

---

## ORDER

AND NOW, this _____ day of _____, 2020 upon consideration of

Defendant Deputy Sheriff Barbara Gunnet's[1] Motion for Summary Judgment Pursuant to Fed.

R.C.P. 56 and her Brief in Support Thereof, as well as any response thereto, it is hereby

ORDERED and DECREED that summary judgment is GRANTED. Plaintiff's First Amended

Complaint, and all Counts contained therein, is dismissed in its entirety *with prejudice*.

**BY THE COURT:**

_____

The Honorable Jeffrey L. Schmehl

---

[1] Plaintiffs name Defendant Barbara Gunnet by her maiden name, "Barbara Rodriguez-Santana" in their Complaint and First Amended Complaint.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

ESTATE OF ANDREW DAVIS GOOD : 
and KRISTI GOOD, : 
                                   : 
                Plaintiffs, : CIVIL ACTION
                                     : 
                v. : 
                                       : DOCKET NO. 20-cv-1431
BARBARA RODRIGUEZ-SANTANA, : 
                                     : 
                Defendant. : 

**DEFENDANT DEPUTY SHERIFF BARBARA RODRIGUEZ-SANTANA'S MOTION
FOR SUMMARY JUDGMENT**

Pursuant to Federal Rule of Civil Procedure 56, Defendant Barbara Gunnet, [1] by and through her attorneys, MacMain, Connell & Leinhauser, LLC, moves for summary judgment in her favor and against Plaintiffs', the Estate of Andrew Davis Good and Kristi Good, Eighth Amendment and Fourth Amendment claims as set forth in their Amended Complaint in this action, on the basis of the facts and authorities set forth in the accompanying Memorandum of Law and Statement of Stipulated Facts, which are incorporated herein by reference as if set forth at length herein.

                                             Respectfully submitted,

Dated: <u>December 30, 2020</u>       By:    <u>/s/ *David J. MacMain*</u>
                                           David J. MacMain, Esquire
                                           Andrew J. Davis, Esquire
                                           Attorney I.D. Nos. 59320/316460
                                           MacMain, Connell & Leinhauser, LLC
                                           433 W. Market Street, Suite 200
                                           West Chester, PA 19382
                                           *Attorneys for Defendant Lancaster County*
                                           *Sheriff's Deputy Barbara Gunnet*

---

[1] Plaintiffs name Defendant Barbara Gunnet by her maiden name, "Barbara Rodriguez-Santana" in their Complaint and First Amended Complaint

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

ESTATE OF ANDREW DAVIS GOOD :
and KRISTI GOOD, :
 : CIVIL ACTION
     Plaintiffs, :
 :
     v. : DOCKET NO. 20-cv-1431
 :
BARBARA RODRIGUEZ-SANTANA, :
 :
     Defendant. :

**BRIEF IN SUPPORT OF DEFENDANT DEPUTY SHERIFF BARBARA RODRIGUEZ-SANTANA'S MOTION FOR SUMMARY JUDGMENT**

Defendant, Lancaster County Sheriff's Deputy Barbara Gunnet ("Deputy Gunnet") [1] by and through her attorneys, MacMain, Connell & Leinhauser, LLC, respectfully submits this Brief in support of her Motion for Summary Judgment.

## I. <u>INTRODUCTION</u>

As more fully discussed herein, Plaintiff Kristi Good brings the present §1983 action alleging that two taser deployments by Deputy Gunnet to her adult son Andrew Good, who was a fleeing felon who had earlier fought with, fled from and been tasered by arresting police officers, and who was escaping custody from Deputy Gunnet, was excessive force, even though there is no evidence that either deployment had any impact on Good, caused him any injury, or prevented his escape.  Indeed, even after the two taser discharges, Good continued his flight, and in his desperation to escape law enforcement jumped into the Cocalico Creek, which he used to successfully evade arrest on a prior occasion, but sadly, his efforts were not successful on this occasion when he drowned. Based on the uncontested facts of this incident, the use of two tasers

---

[1] Plaintiffs name Defendant Barbara Gunnet by her maiden name, Barbara Rodriguez-Santana in their Complaint and First Amended Complaint.

was, as a matter of law and in accordance with prior decisions including decisions from This Court, constitutionally permissible and cannot serve as the basis of a viable §1983 claim.

## II.   STATEMENT OF PERTINENT FACTS

A separate Statement of Undisputed Facts ("SOUF"), has been filed pursuant to the Court's Procedural rules, along with Defendant's Statement of Facts ("DSOF"), with Exhibits attached, for which Defendant contends there is no genuine issue to be tried is being filed with Defendant's Motion and is wholly incorporated herein by reference.

## III.   PROCEDURAL HISTORY

Plaintiffs initially filed their Complaint on March 16, 2020.  *See*, ECF Doc. No. 1.  On June 9, 2020, following an initial exchange of Discovery, Plaintiffs voluntarily dismissed Defendants Borough of Akron and Officer Greg Stone.  *See*, ECF Doc. No. 18.  After additional exchange of Discovery and the taking of four depositions over two days (August 17 and August 18, 2020), which included the depositions of Deputy Gunnet, Plaintiff Kristi Good, and two witnesses to Good's later flight and entry into the Cocalico Creek where he drowned despite law enforcement's efforts to save him.  Plaintiffs dropped their primary claim that alleged that Officer Gunnet tasered Good while he was in the creek which caused his drowning because such allegation was blatantly false.  To the contrary, Good caused his own death through his series of criminal, reckless, and deadly decisions.  As such, on September 10, 2020, Plaintiffs filed a Motion to Amend the Complaint, which reduced the suit to the two present excessive force claims against Deputy Gunnet.  *See*, ECF Doc. No 21.  On September 28, 2020, following the Court's Order granting Plaintiffs' Motion Seeking Leave to Amend the Complaint, Plaintiffs filed their First Amended Complaint that same day.  *See*, ECF Doc. Nos. 25 and 29.

On September 28, 2020, the Court issued a Scheduling Order which indicated that all Fact Discovery shall be completed by November 28, 2020 and that any Dispositive Motions shall be filed by December 31, 2020.  *See*, ECF Doc. No. 28.  As such, this matter is now ripe for summary judgment as per this Court's September 28, 2020 Scheduling Order.  *See*, Doc. No. 28.

### IV.    <u>STANDARD OF REVIEW</u>

Summary judgment should be entered "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Fed. R. Civ. P. 56(c)*.  A fact is material when it affects the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).  A genuine issue of material fact exists when the evidence requires a fact finder to resolve the parties' differing versions of the truth at trial.  *Id*. at 249. Accordingly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  *Id*. at 247-48 (emphasis in original).

The standard for ruling on a motion for summary judgment as articulated by the Supreme Court in *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) is as follows:

> the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial.

*Celotex Corp v. Catrett*, 477 U.S. at 322 (1986).

"[I]t is proper for a district court to grant summary judgment when a plaintiff fails to produce any evidence on a necessary element of her claim."  *Hernandez v. Borough of Palisades Park Police Dep't.,* 58 Fed. Appx. 909 at 912 (3d Cir. January 29, 2003) (citing *Celotex*, 477 U.S. at 323-25).  The plaintiff "need not try her case by carrying the burden of persuasion, but

3

she must, at a minimum, produce evidence on every element of her claim." *Hernandez*, 58 Fed.

Appx. at 912. Further, "the burden on the moving party may be discharged by showing -- that is,

pointing out to the district court -- that there is an absence of evidence to support the nonmoving

party's case." *Celotex*, 477 U.S. at 325. Once the moving party has done so, "the burden shifts

to the non-moving party to provide evidence to support each element of the party's claim."

*Hernandez*, 58 Fed. Appx. at 911.

In short, Plaintiffs may not rest upon the mere allegations set forth in their Complaint, but

rather must come forward with competent evidence to establish that there is a genuine issue of

*material* fact remaining for trial.

## V.      ARGUMENT

### A. Plaintiff's 8th Amendment Claim Is Inappropriate And Fails

The Eighth Amendment provides that excessive bail shall not be required, nor excessive

fines imposed, nor cruel and unusual punishments inflicted. *See*, USCS Const. Amend. 8.

Confinement in a prison is a form of punishment subject to scrutiny under the Eighth

Amendment standards. *Hutto v. Finney*, 437 U.S. 678, 685 (1978). Further, the Supreme Court

has stated that "deliberate indifference to serious medical needs of prisoners violates the [Eighth]

Amendment because it constitutes the unnecessary and wanton infliction of pain contrary to

contemporary standards of decency." *Helling v. McKinney*, 509 U.S. 25. 32 (1993).

However, it is well-settled that the Eighth Amendment does not provide protection to

individuals who have not yet been convicted or sentenced. "The Eighth Amendment was

designed to protect those convicted of crimes and consequently the Cruel and Unusual

Punishment Clause applies only after the State has complied with the constitutional guarantees

traditionally associated with criminal prosecutions." *Whitley v. Albers*, 475 U.S. 312, 318

4

(1986).  In short, the Eighth Amendment applies to prison claims and is wholly inapplicable to this matter.  Thus, Plaintiffs' claim under the Eighth Amendment fails as a matter of law and must be dismissed.

### B.  Plaintiff's 4th Amendment Claim Is Legally and Factually Baseless

#### 1.    The Force Utilized by Deputy Gunnet Was Constitutionally Permissible

As discussed herein, the force used by Deputy Gunnet's two taser deployments at a fleeing felon, which had no apparent effect, caused no injury, and did not prevent his escape – is constitutionally permissible as a matter of law as held by numerous courts, including This Court.

The simple and uncontested facts underlying Plaintiff's claim can essentially be boiled down to the following: (1) Plaintiff Andrew Good was a convicted felon being taken into custody for violations of probation and parole – a fact that is established as a matter of law given his previous guilty plea to – two (2) felonies – burglary and conspiracy to commit burglary on criminal docket CP-36-CR-472-2014; (2) Good was in the custody of Deputy Gunnet, having been placed in shackles and handcuffs while inside the Ephrata Community Hospital; (3) Deputy Gunnet escorted Good to her vehicle and verbally instructed him to enter the vehicle for transport to Lancaster County Prison; (4) Good disregarded these verbal commands, and resisted Deputy Gunnet's physical attempts to place Good into her vehicle for transport; (5) Good fled Deputy Gunnet's custody through a parking lot with vehicles and innocent citizens, ignoring multiple and ongoing commands from Deputy Gunnet and opportunities to stop and end the danger he posed to potential innocent citizens, Deputy Gunnet, and himself; (6) Deputy Gunnet fired her Taser at Good in an effort to regain control over Good; however, he regained his footing prior to Deputy Gunnet reaching him, and continued his escape from apprehension in the parking lot; (7) Deputy Gunnet again deployed her Taser at Good, as he proceeded toward an

embankment next to Ephrata Hospital; however, Good was again able to continue his escape from custody, now with a leg free from his shackle restraints; (8) There is no evidence that either taser actually effected Good or caused him any injury; (9) In the course of furthering his escape from custody, Good entered the nearby woods, and eventually Cocalico Creek; and (10) Good subsequently submerged in Cocalico Creek and died during his flight from custody.  The only issue that is contested is whether the two Taser deployments by Deputy Gunnet while Good was in and around the Ephrata Community Hospital parking lots and grassy areas was constitutionally permissible based on Good's actions.

In order to prevail on his excessive force claim, Plaintiff must prove that the force used was objectively unreasonable under the Fourth Amendment. *Graham v. Connor*, 490 U.S. 386, 388, 394 (1989) (explaining that "all claims that law enforcement officers have used excessive force . . . in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard."). As an initial matter, it is well-settled that "the right to make an arrest . . . necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham*, 490 US at 396.

Accordingly, a court should consider the specific circumstances of the case when evaluating the reasonableness of an officer's use of force, and the Supreme Court in *Graham* provided three (3) main factors to consider when making this evaluation (1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of the officers or others; and (3) whether the suspect was actively resisting arrest.  *See also*, *McNeil v. Easton*, 694 F. Supp. 2d 375, 392 (E.D. of Pa. 2010)(J. Gardner) (applying 3 *Graham* factors – use of taser to stop a fleeing suspect, on a staircase, was constitutionally permissible).

6

In *Sharrar v. Felsing*, 128 F.3d 810, 822 (3rd Cir. 1997), the Court identified six (6) additional factors in determining if the force used was reasonable: (1) whether the physical force applied was of such an extent to lead to injury; (2) the possibility that the persons subject to the police action are violent or dangerous; (3) the duration of the police officer's actions; (4) whether the action takes place in the context of effecting an arrest; (5) the possibility that the suspect may be armed; and (6) the number of persons with whom the police must contend.

The Supreme Court in *Graham* further instructed that "the 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." 490 U.S. at 396; *see also*, *Brown v. United States*, 256 U.S. 335, 343 (1921) ("Detached reflection cannot be demanded in the presence of an uplifted knife."). In particular, the Supreme Court cautioned that "the calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." *Id.* at 396-97.

In *Smith v. Freland*, the Sixth Circuit found that the oft-cited 20/20 hindsight language of *Graham* "carrie[d] great weight . . . since all parties agree that the events in question happened very quickly." 954 F.2d 343, 347 (6th Cir.), *cert. denied*, 504 U.S. 915 (1992).

> Thus, under *Graham,* we must avoid substituting our personal notions of proper police procedure for the instantaneous decision of the officer at the scene. We must never allow the theoretical, sanitized world of our imagination to replace the dangerous and complex world that policemen face every day. What constitutes "reasonable" action may seem quite different to someone facing a possible assailant than to someone analyzing the question at leisure.

*Id.* (emphasis added). As stated by the Third Circuit, "Monday morning quarterbacking is not allowed." *Lamont v. New Jersey*, 637 F.3d 177, 183 (3d Cir. 2011).

As applied here, and when looking at other similar cases where a Taser was used, Deputy Gunnet's use of the Taser was clearly constitutionally permissible.

In the present case, Deputy Gunnet was faced with a fleeing felon, Plaintiff Andrew Good. Good ran on foot through the parking lot of a hospital and across a two-laned road where innocent bystanders were both walking and driving. Deputy Gunnet ordered the Plaintiff to peacefully enter her vehicle, and later to stop running, commands which Good heard and with which he refused to comply. Undeterred in his continued flight, and without any regard for the safety of himself, Deputy Gunnet and potential citizens, Good chose to continue to flee. Deputy Gunnet in an attempt to put an end to the escape from custody, and to regain control over Good, deployed her Taser at Good, and he fell to the ground, momentarily stopping his flight. Despite this initial "setback" in his plan, Good still did not stop his flight, continuing to run through the Ephrata Community Hospital emergency room parking lot, and around the corner of the facility. Deputy Gunnet was constitutionally permitted to use a second Taser discharge to stop the fleeing Good as he rounded the building's corner. Good lost his footing only briefly, conducting a short roll down the small embankment at the side of the hospital, then regaining his feet, and continuing his flight through another parking lot, across a trafficked roadway, and into woods surrounding Cocalico Creek. The use of force in Deputy Gunnet twice deploying her Taser at Good was permissible, and clearly did not impede Good or cause him injuries to hamper his escape from custody. Indeed, it is not clear that Good was impacted or effected by either deployment, nor is there any evidence whatsoever that he suffered any injury. While the conclusion to this factual scenario resulted in continued escape and eventual self-caused drowning, this unfortunate ending was the result of Good's own actions.

Indeed, in applying the *Graham* and *Sharrah* factors to the facts of the present case, it is clear that the use of force by way of deploying two Taser cartridges is constitutionally permissible:

(1) *the severity of the crime at issue* – Deputy Gunnet took custody of Good at Ephrata Community Hospital, where he was examined following his arrest by Ephrata Borough and Akron Borough police officers on a Lancaster County violation of probation/parole warrant for his felony Burglary case.  Good chose to place himself, Deputy Gunnet and additional responding officers, and innocent citizens in danger by initiating a dangerous foot pursuit through parking lots and roadways trafficked by pedestrians and occupied vehicles;

(2) *whether the suspect poses an immediate threat to the safety of the officers or others* – Good began a reckless foot chase with Deputy Gunnet through hospital parking lots and roadways trafficked by pedestrians and occupied vehicles on a Saturday evening, at a facility open 24/7 for the purpose of providing medical care;

(3) *whether the suspect was actively resisting arrest* – Good, who had previously resisted arrest fought with, and been tasered by, the arresting officers which is why Good was at Ephrata Hospital, was actively resisting and fleeing Deputy Gunnet for an extended time period on foot, and was not successfully apprehended prior to his accidental death by drowning in Cocalico Creek during his escape;

(4) *whether the physical force applied was such an extent to lead to injury* – There is no evidence that Good suffered any injury as a result of the two Taser discharges, as is evidenced by his continued flight, and "successful" escape from custody;

(5) *possibility that the person subject to police action was dangerous* – Good was known to have a criminal history, given that his warrant was for a violation of probation/parole, and his willingness to run, even while initially shackled and handcuffed, exhibited that he would do anything to get away;

(6) *the duration of the police officers' actions* – Good was subject to one (1) five (5) second taser cycle, and at least an attempted second five (5) second taser cycle, though from the surveillance footage from Ephrata Community Hospital, it appears that the second cycle was incomplete given Good's ability to continue running;

(7) *whether the action took place during the context of effectuating an arrest* – the force used by Deputy Gunnet was done in an effort to arrest and transport Good pursuant to his actions as set forth in the warrant; and

(8) *the possibility that the suspect is armed* – Good was unarmed and initially secured in leg shackles and handcuffs at the outset of the flight, though Good was able to free at least one leg from his leg restraints.

9

The issue of whether the use of the taser constitutes excessive force is fact specific. *Yarnall v. Mendez*, 509 F. Supp. 2d 421 (D.Del 2007).  Even if a plaintiff is not armed, it is reasonable for law enforcement to employ multiple rounds of non-lethal force if necessary, to effectuate an arrest.  *See*, *Mierzwa v. United States*, 282 Fed.Appx. 973, 979 (3d Cir. 2008) (holding that when the physical force of officers was insufficient to subdue an unarmed arrestee, it was objectively reasonable to subsequently employ pepper spray).  District Courts and the Third Circuit have held that the use of a taser to overcome a suspect's resistance is reasonable.

In *Patrick v. Moorman*, 536 Fed. Appx. 255 (3d Cir. Aug. 27, 2013), the Third Circuit upheld the entry of summary judgment entered in favor of a defendant law enforcement officer by this District Court in the case where an individual who attempted a demand note style robbery of a bank, and then fled officers and was subsequently tased in the course of his flight.  Plaintiff Patrick – like Good in the instant case – was not armed.  The officer warned the fleeing suspect to stop, and, like here, the suspect continued to flee despite commands to stop.  The officer fired his taser to stop the fleeing plaintiff.  Unlike the instant case, the plaintiff in *Patrick* suffered severe injuries including multiple broken bones, head and facial injuries and memory loss. Judge Dalzell, and the Third Circuit applied the three (3) primary *Graham* factors to determine if the use of a taser was objectively reasonable – (1) severity of crime – a bank robbery is a severe crime; (2) threat of danger – a fleeing, desperate and uncaptured felon creates grave danger to the public; and (3) resisting arrest – the suspect was fleeing and doing his best to avoid capture.  Notably, the Third Circuit said, "Patrick's injuries have little bearing," on the analysis of whether the force was reasonable.  *Id.* at p. 259.  The Court also noted that it was plaintiff Patrick - like Plaintiff in this case – who created the danger and risk to innocent citizens by his criminal acts

10

and flight, which he could have ended at any time had he surrendered.  Weighing all of the above, the Third Circuit, like Judge Dalzell before them, held that the use of a Taser discharge to stop a fleeing suspect who refused to stop, was constitutionally permissible force, even if the suspect suffered rather severe injuries.

Likewise, in *McKenney v. Harrison*, 635 F.3d. 354 (8th Cir. 2011), officers were faced with a similar situation as is presented here – the service and arrest of an individual on warrants. When the officers confronted the suspect, in a confined area – the second floor of a home – he began to act suspiciously, and the officer pulled out her taser and warned the suspect 'you don't want to be tasered.'  Shortly thereafter, the suspect attempted to evade arrest by lunging toward the second-floor window. The officer discharged her Taser to stop the fleeing suspect. Unfortunately, the suspect/decedent fell from the window and died four (4) days later from his injuries.  The 8th Circuit held that the use of force, even with the tragic result, was constitutionally permissible and not unreasonable and thus affirmed the entry of the District Court's entry of summary judgment. More specifically, the Court held that:

> [w]hen the suspect made a sudden movement toward the window, which the officers reasonably interpreted as an active attempt to evade arrest by flight, the officers were entitled to use force to prevent the suspect's escape and effect the arrest.
>
> Although the charges were limited to misdemeanors, the officers executing the warrant were not required to let Barnes run free.
>
> And although the outcome was tragic a reasonable officer, knowing that a Taser is designed to incapacitate instantly, could have believed that the force would incapacitate the suspect before he reached the window, while he was not in an elevated position and likely to fall.

11

*Id.* at 360 (citations omitted).  As with the instant case before the Court, officers were faced with an individual engaged in active resistance and flight when attempting to bring and keep him in custody, and were justified in deploying the Taser in an effort to put an end to the escape/flight.

In *Wargo v. Municipality of Monroeville*, 646 F. Supp. 2d 777 (W.D. Pa. 2009), the Monroeville Police Department received a dispatch over the radio concerning a potentially suicidal individual with a firearm.  Upon approaching the plaintiff, the officer repeatedly requested that the plaintiff remove his hands from his pockets where the gun was located.  The plaintiff refused to comply and was tased.  However, the taser was not effective.  The officer tased plaintiff five (5) more times without success.  Another officer then tased plaintiff from the back, causing him to fall down.  Once on the ground, plaintiff still refused to comply with the officer's commands to put his hands to his sides.  Therefore, he was tased again and was able to be handcuffed.  The Court held that plaintiff's decision to ignore instructions to disarm, his suicidal threats, and his continued advance towards the officer would have justified the officer's use of ***deadly*** force for his protection.  Further, the Court held that the last round of the taser when the plaintiff was on the ground but refusing to comply was not excessive and would not be deemed unreasonable for as plaintiff "mounted his last act of resistance by refusing to assume a position that allowed for his arrest."  *Id.* at 788.

In *McNeil v. City of Easton*, 694 F. Supp. 2d 375 (E.D. Pa. 2010)(J. Gardner), the Court found that the use of the taser was not excessive.  Police officers responded to an anonymous 911 call regarding a domestic dispute.  On arrival they could hear a woman screaming and loud banging coming from the home.  The officers entered the home and encountered the plaintiff at the top of a set of stairs.  Plaintiff was ordered to come down the stairs, but he refused to comply.  Fearing that plaintiff had access to a weapon, plaintiff was tased.  Once he was on the ground,

12

the plaintiff refused to comply with commands to show his hands, therefore he was tased again and was able to be handcuffed. Applying the *Graham* and *Sharrar* factors, the Court held that the use of the taser on the Plaintiff was reasonable.

Here, Deputy Gunnet's use of the taser was constitutionally permissible based on prior evidence, as it was only deployed after Good failed to comply with her verbal instructions, physically resisted her efforts to place him in her patrol vehicle, and then fled through a populated and trafficked area to avoid the successful conclusion to his apprehension. Plaintiff had earlier in the day taken Akron Borough and Ephrata Borough police officers on a foot pursuit and displayed active resistance to their efforts to evade arrest. Further, there were people out and about walking in and out of the hospital and driving in the parking lot and on the roadways which Good fled across during his flight. Lastly, the Taser deployments clearly did not cause any injury to Good, as he twice regained his footing and continued running in furtherance of an escape. The only injuries suffered by Plaintiff occurred after his interactions with Deputy Gunnet, when he fled into the nearby woods and unsuccessfully attempted to navigate across Cocalico Creek in furtherance of his flight. While the conclusion to this story is tragic, the actions of Deputy Gunnet were lawful, not excessive, did not cause any harm or damages to Good, and were not violative of any of Good's constitutional rights.

Therefore, under the precedent in this Circuit, including *Brown, Patrick, Wargo* and *McNeil,* the use of the two taser rounds by Deputy Gunnet was constitutionally permissible in her attempts to ensure that Good, who exhibited that he would do anything to evade arrest, could not continue to flee. *See also*, *Brown v. Cwynar*, 484 Fed. Appx. 676, 681 (3d Cir. 2012) (finding it was reasonable for an officer to deploy a taser where he was dispatched for assistance, arrived and witnessed the plaintiff scuffling with another officer, was informed plaintiff had been

13

tased already and continued to resist, and witnessed plaintiff lying on the ground and refusing to release his hands); *Scott v. Casey*, 2018 U.S. Dist. LEXIS 22907 (E.D. Pa. February 13, 2018) (granting summary judgment in favor of defendant police officer, and finding that defendant did not use excessive force, and at the very least was entitled to qualified immunity, in deploying his taser three times at plaintiff where he was dispatched to a radio call requesting police assistance and upon arrival observed Plaintiff angrily knocking supplies out of the shelves in an ambulance, unstrapping himself from a stretcher, kicking a paramedic in the chest, and plaintiff grabbed defendant by the throat, refusing to calm down).

### 2.      <u>Deputy Gunnet Is Entitled To Qualified Immunity</u>

Even if the Court finds the issue of whether there was a Constitutional violation too close to call, Deputy Gunnet is nevertheless entitled to qualified immunity on the Fourth Amendment claim and therefore is entitled to judgment in her favor.

The defense of qualified immunity shields government officials from liability whenever their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Ashcroft v. al-Kidd*, 563 U.S. 731 (2011); *Harlow v Fitzgerald*, 457 U.S. 818 (1982); *McGreevy v. Stoup*, 413 F.3d 359, 364 (3d. Cir. 2005).

To be clearly established, a right must be sufficiently clear "that every 'reasonable official would [have understood] that what he is doing violates that right.'" *Reichle et, al. v. Howards*, 566 U.S. 658, 659 (2012).  In other words, "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft,* 563 U.S. at 741.  This "clearly established" standard protects the balance between vindication of constitutional rights and government officials' effective performance of their duties by ensuring that officials can

14

"'reasonably . . . anticipate when their conduct may give rise to liability for damages.'" *Anderson v. Creighton*, 483 U.S. 635, 646, (1987) (quoting *Davis v. Scherer*, 468 U.S. 183, 195 (1984)).

Thus, this Court must determine whether Deputy Gunnet's actions were those that a reasonable officer would have taken under the circumstances as perceived by her. On April 14, 2018, Deputy Gunnet resumed custody of Good at the Ephrata Community Hospital following his arrest by other officers on a Lancaster County warrant for a violation of probation/parole conditions. There is no dispute that Good became uncooperative, even aggressive towards Deputy Gunnet. Deputy Gunnet first utilized verbal commands, then attempted to physically guide Good into her patrol vehicle for transport to Lancaster County Prison. Good, instead of complying, attempted to flee the scene.

There is absolutely no evidence of record that it was 'plainly obvious' or that 'every officer' in Deputy Gunnet's shoes would have known that deploying her taser on a fleeing arrestee, who was now running through a publicly trafficked area in an effort to escape, was violating Good's rights. Indeed, existing caselaw, including *Brown, Patrick, Wargo,* and *McNeil*, make clear and instructs law enforcement officers such as Deputy Gunnet that they may permissibly use a taser to detain a suspect such as Good who was evading arrest.

Based on the facts of record, Deputy Gunnet in deploying her Taser in an effort to overcome Good's active resistance and flight did not violate clearly established statutory or constitutional rights, specifically Good's Fourth Amendment rights.

As such, Deputy Gunnet is, at minimum, entitled to qualified immunity.

### C.    Plaintiff's Request For Punitive Damages Must Be Dismissed

Even if this Court does not dismiss Plaintiffs' claims in total, Plaintiffs' demand for punitive damages against Deputy Gunnet should be dismissed.

15

"A jury may be permitted to assess punitive damages in an action under §1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983). "While the *Smith* Court determined that it was unnecessary to show actual malice to qualify for a punitive award…its intent standard, at a minimum, required recklessness in its subjective form. The Court referred to a 'subjective consciousness' of a risk of injury or illegality and a '"criminal indifference to civil obligations."'" *Kolstad v. American Dental Ass'n*, 527 U.S. 526, 536 (1999) (discussing *Smith* in the context of a Title VII case).

There is no evidence that Deputy Gunnet was motivated by evil intent or that she was recklessly indifferent to Plaintiff Andrew Good's constitutional rights.  On the contrary, the testimony, video evidence, and undisputed facts are illustrative of an officer attempting to utilize verbal commands, some physical force, and then non-lethal force by way of Taser to maintain custody over an arrestee in active resistance and flight in an area populated with and trafficked by innocent civilians.  Deputy Gunnet's actions do not come close to the standard of willful and malicious conduct that is required for punitive damages.  As such, Plaintiffs' request for punitive damages must be dismissed.

## VI.    CONCLUSION

Based on the foregoing, Plaintiffs have failed to establish the requisite elements of any of the claims contained in the First Amended Complaint.  Thus, Deputy Gunnet respectfully requests that this Court enter an Order granting summary judgment in her favor and against Plaintiffs, on the remaining §1983 claims in accordance with Federal Rule of Civil Procedure 56.

16

Respectfully Submitted,

**MacMain, Connell & Leinhauser, LLC**

Dated:  <u>December 30, 2020</u>          By:     <u>*/s/ David J. MacMain*</u>
David J. MacMain, Esquire
Andrew J. Davis, Esquire
Attorney I.D. No. 59320/316460
433 W. Market Street, Suite 200
West Chester, PA 19382
*Attorneys for Defendant Lancaster County*
*Sheriff's Deputy Barbara Gunnet*

17

**CERTIFICATE OF SERVICE**

I, David J. MacMain, hereby certify that on this 30th day of December, 2020, a copy of the foregoing *Defendant's Motion for Summary Judgment and Brief in Support Thereof* was served upon the following via ECF notification:

Graham F. Baird, Esquire
Two Penn Center
1500 JFK Boulevard, Suite 1240
Philadelphia, PA 19102
*Attorney for Plaintiffs*

**Respectfully submitted,**

**MacMain, Connell & Leinhauser, LLC**

BY:    */s/ David J. MacMain*
       David J. MacMain, Esquire
       Attorney I.D. Nos. 59320
       433 W. Market Street, Suite 200
       West Chester, PA 19382
       Tel: (484) 318-7703
       *Attorney for Defendant Lancaster County Sheriff's Deputy Barbara Gunnet*